Case number 12-1282 et al. Louisiana Public Service Commission Petitioner v. Federal Energy Regulatory Commission Mr. Pontham for Petitioner, Louisiana Public Service Commission Mr. Moot for Petitioner Energy Services, Inc. and Ms. Perry for responding. May it please the Court. My name is Mike Pontham. I represent the Louisiana Public Service Commission. I will attempt to argue two issues. First, FERC's decision to refrain from adjusting the depreciation rates that entered the energy bandwidth tariff in the face of findings that the depreciation allowances set by the states disrupted, distorted the bandwidth allocation with which FERC took no issue is an unlawful abdication and sub-delegation of FERC's authority. Second, FERC's change of rules in the compliance proceeding from the rule that the Court affirmed six years ago when I was here on that case to a new rule that allows energy to change the tariff in the compliance proceeding is arbitrary. With regard to depreciation, the Court has before it a cost allocation tariff. The purpose of the tariff is to bring the costs of all the operating companies within plus or minus 11 percent. In order to do that, the costs of each of the companies are totaled and compared. And Energy has had the practice of booking depreciation a very large portion of the costs that go into this bandwidth in its FERC accounts pursuant to state retail decisions. In this case, FERC told us to litigate all issues related to justice and reasonableness in the bandwidth proceeding. It dismissed an LPSC complaint on depreciation that we filed in 2008. The LPSC showed, along with the FERC staff, that these depreciation rates were out of all conformity with any rate-making or accounting principle, and the judge so held. The case went up to FERC, and FERC explicitly said, we take no issue with the judge's findings. But it said, well, we're going to put off any resolution of the issue for a future Section 2065. In other words, two years after they dismiss our filing, they say, go make a filing. Haven't you made that filing? We made that filing, Your Honor, yes. So? It's still sitting at FERC, Your Honor. It's on rehearing. Right. And in that case, Your Honor, my opponents say it's not before you. You shouldn't pay attention to it. All you have to do is read the opinion to see that the FERC We did read the opinion. Okay, to see then that the FERC refused to confront the issue. The issue is these costs that are computed on different local policies are distorting the FERC wholesale rate. It cannot achieve its objective if you depreciate the Arkansas nuclear units on 40 years. But isn't the Commission's only point about this is that you can raise that in the 205 and 206 proceedings? Yes, Your Honor, but everything in the meantime we lose. This is not the normal FERC policy. FERC has a policy on formula rates. Once you find out a cost is unjust and unreasonable, you can go back and fix it for prior years. They have said this applies to every formula rate. But they say, oh, no, not for the bandwidth tariff. The bandwidth tariff is the filed rate, as they call it, mandates the use of state-set depreciation rates in the bandwidth tariff. So you can't go back. So the point is we got our second complaint filed in 2010, and FERC basically, you know, they said, well, we don't have to follow our own policy all the time. Our precedents are not always applicable. We understand the FERC is complaining about what the cost allowances do to the tariff's purpose, but we aren't going to address that. We're going to say, hey, you can't change it, because there's been no change in circumstances. Well, there was a change in circumstances. They originally told us you can review it in bandwidth proceedings. Two years later, they said you have to review it in bandwidth proceedings. Then 2010, they said, oh, we're not going to do this in bandwidth proceedings. That cuts off our rights, Your Honor. If we were in the 2000 case, FERC would agree to go back. Then this would be a choice-of-procedure case, and the fact that we scored ten touchdowns, and then they decided to call the rules off and start over with a new game, you know, at least we would have our rights going forward. But what they have done is not that. They first used up three years telling us you have to litigate it in the bandwidth case, with incredible findings from the ALJ that they took no issue with, that Arkansas, Energy Arkansas, was advancing depreciation from way out in the future into the time when the bandwidth would apply to Energy Arkansas. They intended to withdraw, and they have withdrawn. So it basically allowed Energy Arkansas to export future depreciation by bringing it forward into the cost allocation tariff and computing Energy Arkansas's costs on an inconsistent basis, and therefore the other companies have to pick up 80 percent, basically, of the cost. This is an abdication under this court's precedent. The Fifth Circuit said it's not a subdelegation, but they have a two-part test, and no agency could ever subdelegate under the Fifth Circuit's test. The Fifth Circuit said you have to find it reasonable, divest authority in the outside entity, which the agency would always find, and then you have the right to change the tariff prospectively for the future. You know, in the meantime, it is a subdelegation. This particular subdelegation is still in effect eight years after the bandwidth formula was adopted. So we've lost eight years unless, you know, the FERC would change its rule on retroactive relief. My second point, and I'll try to make this quickly, is this. You know, Judge Stadel, you were on the panel on the compliance proceeding. It's true. In the compliance proceeding, FERC said you have to comply with ETR 26 and 28. Energy went in and said, okay, we've eliminated all our changes, every darn one of them. Then, in this case, later, Energy provides its data. It doesn't conform to ETR 26. Now, when I was here before you last, you were quite forthright in saying, counsel, you should have known to apply for rehearing of 480. You can't change anything in the compliance case. Energy said, you can't change anything in the compliance case, the interveners. FERC said, you can't change anything in the compliance case in this court, and this court so ruled. Now we have a ruling, oh, yeah, Energy changed it. Your time is up, so quickly finish. Okay, now we have a ruling, Energy changed it. Even as they said they did. Okay, thank you. Please support John Moot for Energy Services. We raised two, and only two, objections to opinion 505 before this court. The first has to do with the Union Electric contract, which gives Energy Arkansas the right to recover purchased energy expense recorded in account 555 from Union Electric. There's no dispute that the bandwidth payments are properly recorded in account 555, and FERC put the bandwidth payments in a service schedule entitled Exchange Energy because it said that reflects the underlying reasons for the cost disparities that led to the remedy. The ALJ, recognizing this and carefully sifting through the extrinsic evidence, ruled in our favor. FERC reversed for two reasons. The first was, these are not purchased power costs at all. They're something different. They're a grapefruit, not an apple. That's wrong because net settlements go in account 555 for reasons here because they are necessary to make the underlying transaction. Are there any items that are properly within 555 that are not under the, that you wouldn't call purchased energy expense? Yes, as the extrinsic evidence showed, which the FERC ignored, which under SPP versus FERC just four months ago, this court said, that's reversible error to ignore evidence is not to weigh it. Our chief accounting officer said, and he showed in itemized bills and invoices, that the only thing you do is you pull out capacity. That leaves energy, and you don't pull out net settlements because they're net settlements. You only pull them out when they relate to capacity, which, for example, was MSS-1. It's sitting in his testimony. FERC ignored it. Here, FERC says, well, we could ignore it because it was subjective intent evidence. That's not right. We did say that, but we had course of dealing evidence, which was the last contract protected them from certain energy price spikes because it fixed the peaking charge. They gave that up. The contract, as I understand it, well, it's very short. It just says purchased energy expense recorded in account 555, but there's no definition in the contract of what a purchased energy expense is. Is there? No, no further definition. And there's no definition in the federal regulations that I've found? There's none of that. And that phrase, purchased energy expense, is not used in account 555. Isn't that correct? That is true, but if that were the case, there would be no costs that were flowed through. What account 555 says, I'm purchased power. If it's not defined in the federal regulations, it's not defined in account 555, and it's not defined in the contract, why doesn't that make the question an open question? And exactly. The FERC said it was ambiguous. All the parties argued, not surprisingly, unambiguous in our favor. All the parties also argued, if it's ambiguous, also in our favor. And FERC, finding it ambiguous, refused to look at our extrinsic evidence. You can't find one site to that evidence in the FERC's orders. It ignored it, and what our chief accounting officer showed was, in the course of performance, this is how we handle account 555. We pull out capacity, everything else stays in. There's no third category. I'd like to turn to the interest issue. FERC, when it approved the bandwidth formula, denied Louisiana's request for interest. It reversed course in this case for two reasons, only one of which is defended here. The first was that this court's decision in Anadarko supported it. The FERC wisely chooses not to rely on that because there's FERC. But did you raise that in your petition for re-hearing, Anadarko? That was a new rationale for the same result. So it did not have to be raised. Why didn't it have to be raised?  In the commission's original order, didn't it deny the order you're challenging? It changed its position and denied interest recovery, right? It changed its position, sua sponte, and ordered interest, and it didn't cite Anadarko. My question is, did you challenge that in your petition for re-hearing before the commission? We did, and we said, look what you said. Where did you challenge that? I looked. I didn't see it. Where did we challenge it? Yeah, I didn't see it. I mean, I may have missed it. I thought your point about Anadarko was actually good, but I couldn't find it in your, which is at Joint Appendix 1186, I think. I mean, if I missed it, just point it out to me. Yes, we don't cite the Anadarko case, but that's because we said that FERC reversed course. Of course it did. And it relied on the Anadarko case. But you didn't say to FERC your new position is inconsistent with Anadarko. Anadarko said that these, originally they said Anadarko doesn't apply because these aren't rates. You didn't challenge that. Fair enough, but FERC doesn't even defend its order. That's because you didn't challenge it in the petition for re-hearing. No, actually, if you look carefully at FERC's brief, what it says is the three reasons in Anadarko. We actually go into some detail because FERC, for the first time in re-hearing, cited Anadarko. We went into the three reasons, not the fact that FERC, which is different, that FERC reversed course on how it applied Anadarko. And if I, let me just say two more things about the interest holding. FERC's only reason here for defending its order is that it took longer than we expected. And so our original holding was not appropriate. That is error for two reasons in our view. The first is there was nothing surprising or unusual about a system agreement hearing taking a couple years. That wasn't Entergy's fault or any other party's fault. The ALJ ruled within 13 months. FERC took four years to issue an order on interest. FERC's second rationale was, well, we're distinguishing a case you cite, Entergy, that lasted three and a half years without interest, and that's distinguishable because Louisiana didn't raise interest on a timely basis. That suggests the standard is twofold. One is you've got to ask for it, and two is it has to be a long time. But that's not the standard because Louisiana didn't ask for it here. They had already lost the issue, and FERC raised it sui sponte. So our view is that there's no rational basis for picking out of a hat five years versus three years versus one year delay, saying one of them is too much, the others are fine. Thank you. Thank you. Good morning, Your Honors. Lona Perry for the commission. With regard to the interest issue, the commission decided to award interest at this point because when it originally declined to award interest, it found that the bandwidth payments would be made within the next calendar year following when the costs were incurred. And because of the significant difference in the amount of time that's transpired, since the payments should have been made in 2007 but they still have not yet been finalized, the commission decided that it was appropriate to award interest. With regard to the Union Electric contract, the commission appropriately interpreted the ambiguous phrase purchased energy expense recorded in account 555 and determines that the later enacted bandwidth payments could not be legitimately be characterized as purchased energy expense recorded in account 555. And therefore, they denied the entrogy, the right to pass through the payments in the contract to Union Electric. And with regard to Do you agree that there are items that are included in account 555 that cannot be characterized as purchased energy expenses? Absolutely, Your Honor. There are numerous references to, for example, capacity in account 555, which is not a purchased energy expense. Is there more to account 555 than the one small paragraph that appears in the Code of Federal Regulations? No, Your Honor, that's it. That's it? That's the description of the account in the Uniform System of Accounts. Yes, Your Honor, that's right. And it's in entrogy's addendum at 86 also, but that's the sum total of it. That CFR description of account 555 was in existence in 1999? Yes, Your Honor. When this contract was entered in? Yes, Your Honor. I believe it has been the same. I don't know that it has been altered. And with regard to the arguments that were raised by Louisiana, in both cases the Commission found Before you get to them, what is your response to Counsel for Entergy's argument that FERC ignored the evidence bearing on the interpretation of an ambiguous contract phrase, namely the testimony of Entergy's chief account? The Commission spoke about the extrinsic evidence that Entergy put in, in 505A paragraph 36 of the Joint Appendix 105. The Commission talked about the fact that Entergy put in evidence that Entergy did not intend to protect Union Electric against fluctuations in the cost of fuel or the cost of any other source of energy. But the Commission's point was that that doesn't really speak to the issue of the later enacted bandwidth payments. The fact that they intended to pass through all of the costs to Union Electric of supplying electricity to Union Electric doesn't speak to the later enacted bandwidth payments, which do not fit within the language of the contract. Particularly since the variable that they were trying to pass the cost through is purchased energy expense charged to account 555, which the Commission reasonably interpreted to not include everything in account 555, but only purchased energy expense. And there is a separate fuel variable under the contract. So it's literally limited to purchased energy expense, and the Commission reasonably found that simply that the bandwidth payment did not reasonably fit within that very limited scope of the contract language. With regard to the issues that were raised by Louisiana, in both cases the Commission found that in this bandwidth proceeding, which is just the proceeding on the annual filing as opposed to the justice and reasonableness of the formula rate, that the formula rate governed in both cases with regard to using the state depreciation for in the cost and with regard to the definition of the energy ratio, and that the filed tariff controlled, and those components could not be changed in this annual bandwidth proceeding, but only in a 206 proceeding. And as was discussed earlier, Louisiana has filed a 206 proceeding with regard to the depreciation issue, and the Commission denied that complaint, finding that they had not demonstrated that it was unjust and unreasonable to include the state-approved depreciation in the bandwidth formula. If there are no further questions. No? Thank you. So did counsel for the two petitioners at any time? You can each take one minute if you would like it. Mike Fonten for the Louisiana Public Service Commission again. I would note in opinion 505, FERC said that the language in the tariff does permit FERC to decide what the depreciation rate should be, but it said we're going to punt the issue to a future section 206. It wasn't until much later that FERC reinterpreted the tariff. The original interpretation was that FERC can adjust it. It wasn't until much later that FERC said the tariff prevents us from adjusting it. Why isn't your claim in this case moot now? I don't understand why it would be moot, Your Honor. If we sent this case just your part of it back to FERC, what would the result be? I assume, Your Honor, whatever it eventually decides in the 2010 case. It was already decided that. That's on rehearing now. It's on rehearing, but it would apply for 2007. In other words, if the LPSC gets relief on the 2010 complaint, FERC has said in the order in that case you will not get retroactive relief. You will only have prospective relief because we're not going to treat this as a filed rate and unlike all other formula tariffs, we're going to say we can't adjust anything for justness and reasonableness in this tariff. So you think you'd be entitled to compensation? Is that the idea? Well, Your Honor, you would have to read the account. It seems to me that if that were to— my real point with regard to this is that if this Court affirms what FERC did, LPSC has lost its rights for 2007, and the 2010 complaint, the best that can produce is 15 months of refunds. And we're now in 2015. They're just holding this case on rehearing. It would be our position that if you're going to rely on the initial decision of FERC, the first order in the 2010 complaint case, please read it and see the machinations that FERC went through to avoid confronting the effect of these costs on the wholesale tariff. They are in charge of making the wholesale rates just and reasonable. That's what they're supposed to do. You cannot allow five different regulators to decide allowances for whatever parochial reason and still for that tariff to accomplish its purpose. So, you know, I mean, it is true that punt, punt, punt, and now we've got a case we'll actually decide that it won't apply retroactively. Well, that's a denial of rights. Okay. There's one more deal. There's one more. With respect to the question on interest and the rehearing petition, the FERC's finding ordering interest is Joint Appendix 129. It's a single sentence. It comes out of nowhere in contrast to its prior holding. On rehearing, we raised the two points that you would raise if you were challenging it in court. One is it's inconsistent with your prior order in this case. Two is it's inconsistent with your other orders. We didn't, in addition, we submit, have to argue that it's not supported by a number of this court's orders. It was an abrupt reversal. On Ms. Perry's point about the Union Electric contract and considering our evidence, I would commend to you paragraph 36, which is the only place where any evidence is discussed, and it starts with the statement that we criticize the FERC for not reviewing our evidence. It then proceeds to review the evidence of the other parties, and it concludes by saying we've given it all away. Well, ignoring it is not giving it away under this court's decision in Southwest Power Pool v. FERC. Thank you. Thank you, gentlemen.
judges: Tatel, Edwards, Randolph